IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MEGAN A. YOUNG, individually and as legal guardian of the minor children J.Y., K.Y. and M.Y., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 06-324-S-EJL |
| DAVID L. YOUNG, individually and in his Official capacity as Canyon County Prosecuting Attorney; THE SHERIFF OF CANYON COUNTY in his Official capacity; CANYON COUNTY, a political subdivision of the State of Idaho; THE CITY OF NAMPA, a political subdivision of the State of Idaho; THE STATE OF IDAHO, a political subdivision of the United States of America; JOHN DOES 1-5, JOHN DOES 6-10; JOHN DOES 11-15, and JOHN DOES 16-20, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM DECISION AND ORDER |
| Defendants. | ) ) ) | |

Pending before the Court in the above-entitled matter are four motions for summary judgment filed by Defendants and a motion to strike portions of the affidavits of Megan Young and Kathy J. Edwards filed by certain Prosecutor Defendants. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral

Memorandum Decision and Order          -1-

argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

The facts of this case are tragic due to the years of sexual abuse suffered by Plaintiff Megan Young, however, a detailed factual background is necessary for determining whether the Plaintiff has cognizable claims against the Defendants.  Plaintiff Megan Young, individually and as the legal guardian for three minor children, J.Y., K.Y. and M.Y., brought this action against David Young, individually and in his official capacity as the Canyon County Prosecuting Attorney; the Sheriff of Canyon County in his official capacity; Canyon County; the State of Idaho; the City of Nampa and John Does 1-20.  Plaintiff alleges civil rights violations pursuant to 42 U.S.C. § 1983,  a state created danger and intentional and/or negligent infliction of emotional distress by all Defendants.  Defendants deny all claims and seek dismissal as a matter of law of all claims.

Megan Aundrea Marshall (later her named changed to Megan Young and she will be referred to as "Megan") was born on March 4, 1987.  In 1988, Megan  and her mother, Sandra McCurry, moved in to live with Michael Young.  When Megan was 14, she gave birth to her first child on February 3, 2002.  Megan did not list a father on the birth certificate for J.Y.

After the birth of Megan's first child, J. Y., Sandra and Michael were married and Megan petitioned the court to change her name to Megan Young.  Megan was not legally

adopted by Michael Young, but her name was changed.

On October, 24, 2003, when Megan was sixteen, she gave birth to her second child, K.Y.  Megan did not list a father on the birth certificate for K.Y.

On November 4, 2003, Megan's aunt telephoned the Idaho Department of Health and Welfare ("IDHW") and reported her concern that Megan's second child looked just like Michael Young.  The referral was faxed by IDHW to the Canyon County Sheriff's office on November 5, 2003 for further investigation.  Sheriff's Detective Danny Martineau[1] along with Detective Chuck Gentry interviewed Megan at her home in November 2003 and she adamantly denied Michael Young was the father of her two children.[2]  Megan gave the Detectives names of two different boys she said were the fathers of her children although she did not know the whereabouts of the alleged fathers.  Megan's mother was not present for the interview, but the interview was recorded.

Megan later provided Detective Martineau with a letter purporting to be from the father of one of her children.  Detective Martineau determined the referral should be closed based on Megan's denials, the letter and no further evidence.  The closure was approved by

---

[1]It is undisputed Detective Martineau had worked as a School Resource Officer at Middleton High School for approximately three years before he transferred to the Canyon County Sheriff's Criminal Investigation Division for approximately seven months prior to the interview of Megan.  It is also undisputed that Detective Martineau had attended a 36 hours course on conducting child abuse and sexual abuse investigations and had trained under an experienced field officer prior to interviewing Megan.

[2]The audio recording of this interview is attached as Exhibit A to the Affidavit of Chuck Gentry, Docket No. 35-6.

Memorandum Decision and Order          -3-

Detective Martinueau's supervisor.

The following year, on June 30, 2004, Megan disclosed to law enforcement Detective Chris Garrison that Michael Young was the father of both her children. Detective Garrison told Megan she should not be living in the same house as Michael Young. Detective Garrison did not take Megan into custody due to the fact Megan was living with her aunt, Debbie at the time.

Megan stayed with her aunt for two nights and had no contact with Michael Young. Thereafter, she stayed with her aunt Susan Vanderhoof, family member Judy Briggs and a cousin, Brianna Nelson. IDHW was not advised or involved in any decision regarding where Megan was living following her disclosure of abuse to Detective Garrison. The decision to change locations was made by Megan.

On July 9, 2004, the Canyon County Sheriff's Department delivered a Probable Cause Affidavit and Warrant Request to the Prosecutor Defendants requesting charges be brought against Michael Young for sexually abusing Megan and fathering Megan's first two children. Virginia Bond ("Bond") was the Chief Criminal Deputy Prosecuting Attorney who reviewed the materials submitted by the Sheriff's Department and she requested additional corroborating evidence before initiating criminal charges. Before corroborating evidence was received, Bond learned Michael Young had obtained legal counsel. Bond contacted counsel for Michael Young and plea negotiations ensued. Criminal charges were ultimately filed on November 12, 2004. In July 2005, the United States Attorney's Office requested the

Memorandum Decision and Order          -4-

state charges be dismissed as part of a plea bargain on the federal criminal charges.

Michael Young was convicted on federal charges relating to his sexual abuse of Megan and was sentenced to thirteen years in prison and twenty-five years of supervised release. The state charges were dismissed on August 22, 2005.

Michael Young divorced Sandra on July 23, 2004.  On August 2, 2004, Michael and Megan were married.  Megan delivered her third child, M.Y. on June 29, 2005. Megan and Michael Young were divorced in January 2007.

Megan turned 18 years of age on March 4, 2005.  The 180th day after March 4, 2005 was August 31, 2005.  Megan, on behalf of her interest and her three children, filed a Notice of Tort Claim against the State of Idaho and the Prosecutor Defendants on September 23, 2005.  Megan also filed a Notice of Tort claim against the Canyon County Defendants on September 28, 2005.  It is undisputed that Megan did not post a bond prior to filing a complaint against prosecutor David Young.

It was determined that in 1993, Megan Young disclosed to a school counselor that she was being abused by Michael Young.  The disclosure was reported to the Nampa City Police and the IDHW.  Megan was interviewed by a Health & Welfare caseworker.  Megan's mother was notified and spoke with the caseworker.  The police officer required Michael Young to be out of the house that evening.

As a result of the disclosure, Megan was evaluated at the CARES Unit in Boise. During the CARES interview, Megan denied any abuse had occurred and she recanted her

Memorandum Decision and Order          -5-

earlier disclosure so she could stay with her mother.  The decision to allow Michael Young back into the house was solely made by Megan's mother, Sandra Young.  Megan was never in the physical or legal custody of IDHW.

From 1993 until June 2004, Megan did not disclose the abuse she was experiencing to anyone other than her sister, Shami.  Following the birth of her first child, Megan had no contact with anyone associated with the IDHW.  Megan did not speak with anyone from IDHW about possible abuse after 1993.

Motions for Summary Judgment

1. <u>Standard of Review</u>

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. <u>See</u>, <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential

Memorandum Decision and Order          -6-

element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.[3]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party;

---

[3]  See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

2.  Claims of Civil Rights Violations Pursuant to 42 U.S.C. § 1983

A. Section 1983 Claims in General

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that the named Defendants were acting under color of state law. Therefore, the question becomes, did the Defendants' actions deprive Plaintiffs of a right, privilege or immunity secured by the Constitution or federal law.

B.  Qualified Immunity

Certain Defendants have raised the defense of qualified immunity. Police officers are

entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Saucier v. Katz, 533 U.S. 194, 200, 202 (2001). On the other hand, this privilege allows redress where clear wrongs are caused by state actors. Id. "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 200-01. "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial. Id. at 201, see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v. Bryant, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

"The question is what the officer reasonably understood his powers and responsibilities to

be, when he acted, under clearly established standards." Id. at 208.  Plaintiff bears the burden

of establishing the rights violated were "clearly established."  Houghton v. South, 965, F.2d

1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a

method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S.

386, 393-94 (1989).  Therefore, the Court will analyze the constitutional rights Plaintiffs

allege were violated by the Defendants.

C.  Claims Against Municipalities

To make a claim against a municipality for a § 1983 violation, four criteria must be

satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was
> deprived; (2) that the municipality had a policy; (3) that the policy "amounts
> to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the
> policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489

U.S. 378, 389-91 (1989)).

A municipality may not be held liable under § 1983 solely because it employed a

constitutional wrongdoer.   Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

Furthermore, a municipality cannot be held liable under § 1983 where no constitutional

violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).

Memorandum Decision and Order            -10-

D.  Defendants' Claims

1) Sheriff of Canyon County and Canyon County

Plaintiffs claim in Count 3, that the Sheriff of Canyon County, Sheriff Nourse,  and Canyon County violated Plaintiffs' First Amendment rights, Fifth Amendment rights, Due Process rights, Equal Protection rights, and failed to properly train investigators of sexual abuse.  As to the First Amendment right to family associations, the Court finds there are no genuine issues of material fact.  Pursuant to Roberts v. U.S. Jaycees, 468 U.S. 609. 618 (1984),  a person has the right to be free from unjustified interference by the state.  In this case, Plaintiffs allege Detective Martineau's failure to remove Megan from the home at the time he investigated the November 2003 referral violated her right to family association.

As indicated by the undisputed facts and the recording of the interview, Megan was adamant that she was not being abused and that Michael Young was not the father of her children.  Moreover, she provided names of the purported fathers and a letter from one of the alleged fathers indicating no interest in the child.  The evidence provided to the Detective did not support removing Megan from the home.  Additionally, Detective Martineau took no action that prevented Megan from interacting with her family members.  Accordingly, Plaintiffs have failed to establish a factual basis for a violation of Megan's First Amendment rights and the claim must be dismissed.  No defendants prevented Megan from interacting with her family members, so this analysis would be the same for all the Defendants in this action and the claim must be dismissed against all defendants.

Second, Plaintiffs claim a Fifth Amendment violation.  The Fifth Amendments's Due Process Clause only applies to actions of the federal government, not those of state or local governments.  Dusenberry v. United States, 534 U.S. 161, 167 (2002).  Therefore, as a matter of law the Fifth Amendment claims must be dismissed as to all defendants.

Third, Plaintiffs claim a Fourteenth Amendment violation of Megan's substantive Due Process rights based on Detective Martineau's failure to remove Megan from the home as part of the November 2003 IDHW referral.  Basically, the Plaintiffs claim that Detective Martineau's failure to remove Megan from the home in November/December 2003, "caused Megan to suffer continued sexual abuse at the hands of Michael, resulting in the birth of the third minor child."  Amended Complaint, ¶ 97. Docket No. 17.  The question becomes is it a violation of Megan's substantive Due Process rights under the Fourteenth Amendment for the Detective to fail to prevent Michael from sexually abusing Megan after the Detective interviewed Megan.

Under DeShaney v. Winnebago County Dep't of Soc. Serv's., 489 U.S. 189 (1989), the Supreme Court held that the Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." 489 U.S. at 195.   "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."  Id.  Even if a state official refuses

to provide protective services that could avert injuries, the government cannot be held liable under § 1983. Id. at 196.

The facts of the DeShaney case are strikingly similar to the case at bar.  In DeShaney, the allegations were that various governmental actors failed to prevent a father from physically abusing his son.  The state authorities were advised of the suspected abuse on at least five occasions before the father beat the son so severely that he suffered permanent brain damage.  The Supreme Court held that the Due Process Clause does not require government actors to protect private citizens against harm from other private citizens. Rather, the Due Process Clause is intended to protect private citizens from the actions of governmental actors.

In the present case, the DeShaney case requires this Court to find that the Sheriff of Canyon County and Detective Martineau did not violate Megan's substantive Due Process Clause rights as the law enforcement officers were not required to protect Megan from harm from another private citizen, Michael Young.  A "failure to protect an individual from private violence simply does not constitute a violation of the Due Process Clause."   Id. at 197. While law enforcement officers try to protect the public from being harmed, the state actors can not be held liable for a constitutional violation when private citizens harm other private citizens.

The Plaintiff argues the state actors should be liable under an exception to the DeShaney opinion which holds the state actors liable for state created dangers.  The Plaintiff

Memorandum Decision and Order            -13-

cites the Court to Kennedy v. City of Ridgefield, 411 F.3d 1134 (9th Cir. 2005) and its amended version at 423 F.3d 117, but those opinions were withdrawn and cannot be cited as precedent.  See Kennedy v. City of Ridgefield, 440 F.3d 1091 (9th Cir. 2006).  Without relying on Kennedy, the Court agrees that an exception exists to the DeShaney ruling. Four months after the DeShaney decision, the Ninth Circuit did establish the "state created danger theory" in Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989).  In Wood, the Ninth Circuit held that a substantive Due Process Claim could be established where the police create a danger to an individual.  In Wood, the police officer arrested the driver of a car and impounded a vehicle which left the passenger, Wood, stranded in a high crime area early in the morning where she was attacked.  The Court found the governmental actors disregarded Wood's safety amounting to deliberate indifference.  Id. at 558.  In L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996), the court rejected a "gross negligence standard for culpability and determined "the plaintiff must show that the state official participated in creating a dangerous situation, and acted with deliberate indifference to the known or obvious danger in subjecting plaintiff to it."  In Penilla v. City of Huntington Beach, 115F.3d 707 (9th Cir. 1997), the Ninth Circuit emphasized that a due process claim must be based on an affirmative exercise of state power which creates a risk which, but for the state's affirmative action, would not have existed.  In Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007), the Ninth Circuit set forth the rule that the governmental actors must affirmatively place the plaintiff in a position of danger to which she should not otherwise have been exposed.

Memorandum Decision and Order          -14-

Without addressing whether the facts justified Detective Martineau's closure of the investigation, in this case it is undisputed that Detective Martineau's failure to remove Megan from the home did not place Megan in a different danger than she would have otherwise experienced. Detective Martineau took no affirmative action that exposed Megan or her children to a danger different than she or the children were already exposed to prior to the interview. Moreover, Megan's adamant denial of the alleged abuse supports Detective's Martineau's failure to take affirmative action to remove her from the home with Michael Young. The harm in this case was by Michael Young, not Detective Martineau and the state created danger theory does not apply to the facts of this case because the exception requires more than a mere failure to act. Absent an affirmative act to create a danger, the Sheriff and Canyon County cannot be liable for a constitutional violation.

Moreover, there is simply no evidence Megan's children were abused by Michael Young, so there can be no duty owed to these minor children by Detective Martineau or Sheriff Nourse.

Fourth, as to any Equal Protection claim, Plaintiffs have failed to present any evidence that the investigation of the November 2003 IDHW referral was handled differently than any other IDHW referral for alleged sexual abuse and the claim must be dismissed. The Equal Protection argument is the same for all the Defendants, Plaintiffs have failed to establish that the investigation by any of the Defendants was handled differently than any other sexual abuse claim. The policies and practices in this case are facially neutral and require proof of

Memorandum Decision and Order          -15-

discriminatory intent or motive.  Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995).

Plaintiff has failed to establish or create a genuine issue of material fact regarding

discriminatory intent or motive and summary judgment in favor of the Defendants is

appropriate.

Fifth, to the extent Plaintiffs have raised a procedural Due Process clause claim, such

is dismissed as to all Defendants as it is not included in the Amended Complaint.

Having found no constitutional violation by Detective Martineau, the Sheriff of

Canyon County cannot be held liable under § 1983.  The undisputed facts do not establish

a genuine issue of material fact regarding Detective Martineau's training or the training

policies of the Sheriff.  The affidavits of Chris Smith, Christina Garrison and Detective

Martineau establish that Detective Martineau received extensive training prior to

interviewing Megan.  There is no evidence submitted by Plaintiffs that support the argument

the harm to Megan could have been avoided if the Sheriff had trained Detective Martineau

differently.  Thus, summary judgment in favor of Sheriff Nourse on the alleged § 1983

claims should be granted.

As to Canyon County, a municipality cannot be held liable under § 1983 where no

constitutional violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir.

1997).  In this case, the Court has determined that no violation of a constitutional right

occurred, therefore, the claims against the municipality must also be dismissed as a matter

of law.  Moreover, the Court finds Plaintiffs have failed to carry their burden to establish via

Memorandum Decision and Order          -16-

evidence that the municipality had a policy or custom which was the moving force behind the alleged constitutional violations.  A plaintiff is required to provide evidence of a "formal policy" or "widespread practice" in order for a municipality or local government unit to be held liable under § 1983.  <u>Nadell v. Las Vegas Metropolitan Police Dept.</u>, 268 F.3d 924 929 (9th Cir. 2001).   A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1349 (9th Cir.1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1233 (9th Cir.1989).

Here, Plaintiffs allege the Sheriff's Department failed to train or supervise its officers, but has produced no specific evidence of a training or supervision policy that led to a constitutional violation in this case.  Nor have Plaintiffs provided evidence that the actual training received created a widespread practice or repeated constitutional violations for which errant officers were not disciplined.  Because Plaintiffs have not carried their burden, the claims against Canyon County in Count 3 must be dismissed.

2) Prosecutor Defendants (Canyon County and David Young)

Adopting the analysis above for the constitutional claims against these Defendants, the Court finds Plaintiffs claims against the Prosecutor Defendants must also be dismissed

as a matter of law.  Specifically, Plaintiffs allege that the state created a danger when Megan was exposed for approximately four months, from July 9, 2004 (date Prosecutor Bond received the documents requesting criminal charges be filed) and November 12, 2004 (date the state criminal charges were filed).  This constitutional claim fails as the Prosecutor Defendants did not affirmatively place the plaintiff in a position of danger to which she would not otherwise have been exposed.  Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007).  Plaintiffs have failed to establish that the Prosecutor Defendants actions did more than simply expose Megan to a danger that already existed.  See. L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992).  Simply put, the Prosecutor Defendants did not take any affirmative action with deliberate indifference in creating a foreseeable danger to Megan and a mere failure to act does not create liability.  Negligence, whether gross or simple, is insufficient to prove a constitutional violation.  See Daniels v. Williams, 474 U.S. 327, 328 (1986).

Alternatively, prosecutors are entitled to absolute immunity from liability for conduct associated with the judicial phase of the criminal process.  Burns v. Reed, 500 u.S. 478, 486 (1991).  The alleged actions of the prosecutor which delayed the criminal prosecution and resulted in the dismissal of the state charges are the type of actions that are subject to absolute immunity.

Having failed to find constitutional violations by individual prosecutors, the claim against Canyon County also fails.  Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).

Memorandum Decision and Order          -18-

3) State of Idaho - IDHW

Adopting the earlier analysis, the legal result is the same for the claims against the State of Idaho.  Plaintiffs claim the IDHW breached its duty when it failed to remove Megan from the home of her mother.   The IDHW investigated Megan's claims in 1993 when she recanted her allegations of abuse by Michael Young and the IDHW referred the second inquiry in November 2003 to law enforcement officers with Canyon County to investigate. Megan and her children were never in the legal custody of the State of Idaho.  IDHW can hold children no longer than 48 hours.  In this case, Megan and her children were never found be in imminent danger by investigators and Megan's denial of the abuse during both investigations supported Megan being released back into her mother's care.

The facts are undisputed for purposes of determining liability.  Like the social workers in DeShaney, there was no violation of Megan's Due Process rights by the IDHW and the claims must be dismissed.  As to the state created danger theory, the Court finds the IDHW did not take affirmative actions which placed Megan or her children in a different or more dangerous situation than otherwise existed. Also, there is no pattern of unconstitutional behavior by state employees. For these reasons, the Court finds as a matter of law that the IDHW  did not violate Megan's Fourteenth Amendment rights.

Furthermore, the State of Idaho is not a "person" as defined by § 1983 and is not amenable to suit under 42 U.S.C. § 1983.  "Person" encompasses municipalities, not states. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).  Any claims for failing to train

employees also fails for the same reason.  Finally,  the failure to train claims fail as the Court has not found that a constitutional violation has occurred.

### 4) City of Nampa and Nampa Police Department

Applying the analysis to the claims against the City of Nampa and the Nampa Police Department require the claims of constitutional violations to be dismissed.  In 1993, Megan's allegations of abuse to her school counselor were disclosed to the IDHW and local law enforcement from the City of Nampa.  The Nampa Police Department investigated the claims and met with Megan, the IDHW caseworker and the school counselor.  Sergeant Greenwood of the Nampa Police Department interviewed Michael Young and Sandra Young.  At the time Michael Young was interviewed, he had moved out of the house, so there was no imminent danger pursuant to the Child Protection Act.   Megan recanted her earlier allegations and the Nampa Police did not proceed any further with the investigation.

Based on these facts, the Court finds no constitutional violations occurred under DeShaney and the state created danger exception does not apply.  The Nampa Police Department took no affirmative steps that placed Megan in a greater danger than already existed.   L.W. v. Grubbs, 974 F.2d 119 (9th Cir. 1992).  Having found no constitutional violation by individual police officers, the municipality cannot be liable.  Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).

3.  Idaho Constitution Claims

To the extent Counts 3 and 4 set forth a claim for a violation of Idaho's Constitution, a civil cause of action for damages of a state constitutional right does not exist.  Katzberg v. Regents of Univ. of Calif., 58 P.3d 339, 358 (Calif. 2002).  State constitutional claims are not cognizable under Idaho law and this claim must be dismissed as to all defendants.  See State v. Charpentier, 962 P.2d 1033, 1037 (Idaho 1998) (rights of individuals under the Idaho Constitution not greater than those provided under the federal constitution).


4.  Claims of Intentional and/or Negligent Infliction of Emotional Distress

1) Sheriff of Canyon County and Canyon County

In order to establish a claim for intentional infliction of emotional distress, Plaintiffs must prove:  (1) the conduct must be intentional or reckless; (2) the conduct must be extreme or outrageous; (3) there must be a causal connection between the conduct and the emotional distress; and (4) the emotional distress must be severe.  McKinley v. Guaranty Nat. Ins. Co., 159 P.3d 884, 891 (2007).

In order to establish a claim for negligent infliction of emotional distress, the Plaintiffs must prove: (1) the existence of a duty; (2) a breach of that duty; (3) proximate cause; (4) damages; and (5) physical manifestation of the injury.  Czaplicki v. Gooding Joint School Dist. No. 231, 775 P.2d 640 (1989).

The claim for intentional or negligent infliction of emotional distress is a state law

claim that requires compliance with the Idaho Tort Claims Act ("ITCA"), Idaho Code § 6-903. In order to bring this type of state law tort claim, Plaintiffs must file a timely Notice of Tort Claim.  Id.  Compliance with the notice requirements is a prerequisite to filing a state law claim.  Cobbley v. City of Challis, 59 F.3d 959 (Idaho 2002).  It is undisputed that the Notice of Tort Claim was served on these defendants on September 28, 2005.   The failure to file a timely notice within 180 days of Megan's eighteenth birthday, requires this claim to be dismissed.

As to Megan's children's emotional distress claims, the timeliness issue does not apply.  However, the undisputed facts support dismissal of this claim since Plaintiffs do not claim the children were abused by Michael Young or that the Sheriff Department's actions were extreme or outrageous.  In fact, there is a lack of any evidence about specific harm to the children being caused by Detective Martineau or that the Detective owed a duty to the children.

2) Prosecutor Defendants (Canyon County and David Young)

Plaintiffs failed to timely file and serve proper notices of tort claims and the state law claims of Megan must be dismissed as a matter of law.  The notice of tort claim was received approximately three weeks too late on September 23, 2005.   Moreover, Plaintiffs failed to post the requisite bond under Idaho Code § 6-610 for the state law claims against David Young. The claims of the minor children have not established causation as there is no

Memorandum Decision and Order          -22-

allegation that Michael Young abused any of the minor children he fathered with Megan. Future potential harm is not sufficient to create a claim as there is no current evidence of emotional distress.  See Neal v. Neal, 873 P.2d 871 (1994); DeMoss v. City of Coeur d'Alene, 795 P.2d 875 (1990).

Further, Idaho prosecutors and their respective counties are entitled to absolute immunity for quasi-judicial functions.  Nation v. State Dept. of Correction, 158 P.3d 953 (2007).  Plaintiffs claim the prosecuting attorney's office delayed filing criminal charges and the dismissal of the state charges.  Both these allegations are subject to immunity.  The decision to file criminal charges is quasi-judicial.  Botello v. Gammick, 413 F.3d 971, 977 (9th Cir. 2005).  The preparation of filing criminal charges is a judicial function.  Kalina v. Fletcher, 522 U.S. 118 (1997).  The decision to dismiss criminal charges is a quasi-judicial function.  Brooks v. George County, Miss., 84 f.3d 157, 168 (5th Cir. 1996).  Because the alleged actions are subject to quasi-judicial immunity, the Prosecutor Defendants are immune from the state law claims.


3) State of Idaho - IDHW

It is undisputed that Megan did not timely file a notice of tort claim with the Secretary of State, so her state law claims must be dismissed.  Idaho does not recognize a claim for the tort of wrongful life.  Blake v. Cruz, 698 P.2d 315 (1984) and the minor children have failed to establish causation for their emotional distress claims related to the State of Idaho' alleged

Memorandum Decision and Order            -23-

failure to protect their mother.   Therefore, these state law claims must be dismissed.

4) City of Nampa and Nampa Police Department

It is undisputed that Plaintiffs failed to file and serve proper notices of tort claims and the claims must be dismissed as a matter of law.  Further, Plaintiffs failed to respond to the state claim arguments of the City of Nampa and pursuant to Dist. Idaho Loc. Civ. R.  7.1, failure to respond can be deemed consent to granting the motion on the uncontested portions of the motion.

5.  Conclusion

The facts of this case are tragic, however, the legal questions of whether rights were violated or duties breached cannot be driven by the facts.  Instead, this Court must apply the law and the law is clear.  There are no genuine issues of material fact which prevent summary judgment from being entered.  The undisputed facts support the legal conclusion that constitutional rights were not violated and absent violations, the municipalities cannot be liable.  The State of Idaho is not a "person" under § 1983 and Plaintiffs have failed to establish a violation of constitutional rights by the IDHW.  The state law claims must be dismissed due to failure to comply with the tort notice requirements,  because the claims have not been established and  because such claims are not recognized under Idaho tort law.  All

the parties wish Megan had never been abused by Michael Young, but the Defendants cannot be held liable for the private actions of Michael Young and the case must be dismissed.

## Order

Being fully advised in the premises, the Court hereby orders that:

1) Canyon County Sheriff's Department and Canyon County's Motion for Summary Judgment (Docket No. 35) is GRANTED.

2) Prosecutor Defendants' Motion for Summary Judgment (Docket No. 36) is GRANTED.

3) State of Idaho's Motion for Summary Judgment (Docket No. 37) is GRANTED.

4) City of Nampa's Motion for Summary Judgment (Docket No. 38) is GRANTED.

5) Prosecutor Defendants' Motion to Strike (Docket No. 47) is denied as moot as the motion for summary judgment is being granted in favor of the Prosecutor Defendants.

DATED:  **March 31, 2009**

Honorable Edward J. Lodge
U. S. District Judge

Memorandum Decision and Order            -25-